Harland W. CHIDSEY, d/b/a Harland W. Chidsey Farms, Plaintiff-Appellee,

v.

Bert A. GUERIN, d/b/a Bert Geurin, Defendant-Appellant.

No. 20732.

United States Court of Appeals, Sixth Circuit.

June 7, 1971.

Edward M. Yampolsky, Berrien County Legal Services, St. Joseph, Mich. (Alan W. Houseman, Jonathon M. Rutledge, Michigan Legal Services Assistance Program, Detroit, Mich., on the brief), for appellant.

Daniel Joseph, Dept. of Justice, Washington, D. C. (L. Patrick Gray, III, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., John P. Milanowski, U. S. Atty., Grand Rapids, Mich., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

PHILLIPS, Chief Judge.

The Perishable Agricultural Commodities Act, 7 U.S.C. § 499a et seq., requires the licensing of commission merchants, dealers and brokers in perishable commodities. Any licensee who violates the Act is liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation. The Secretary of Agriculture is empowered to issue a reparation order requiring an offending party to pay damages that he determines to be due.

As a prerequisite to obtaining judicial review of a reparation order in a United States District Court, the licensee must post a bond for double the amount of the reparation award.

The question presented on this appeal is whether the bond requirement violates the Due Process Clause of the Fifth Amendment when applied against a licensee who desires to appeal a reparation order issued against him, but who lacks sufficient assets to post the required bond.

Geurin, the appellant, is a resident of Michigan licensed under the Act. Chidsey, the appellee, is a farmer whose ad-

dress is R.D. #1, Penn Yan, New York. The Secretary issued a reparation order against Geurin ordering him to pay Chidsey, the seller of a shipment of tomatoes, the sum of $960.90, which the Secretary determined to be due under the contract of sale. Geurin undertook to appeal to the District Court but failed to post bond because of an asserted lack of sufficient assets to do so. District Judge Noel P. Fox dismissed the action for failure to post bond. 314 F.Supp. 480.

We affirm.

The provision of the statute under attack on this appeal is 7 U.S.C. § 499g(c), which provides in pertinent part as follows:

"Either party adversely affected by the entry of a reparation order by the Secretary may, within thirty days from and after the date of such order, appeal therefrom to the district court of the United States. * * * Such appeal shall not be effective unless within thirty days from and after the date of the reparation order the appellant also files with the clerk a bond in double the amount of the reparation awarded against the appellant conditioned upon the payment of the judgment entered by the court, plus interest and costs, including a reasonable attorney's fee for the appellee, if the appellee shall prevail. * * * Such suit in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated."

The Statute was amended in 1962 by Public Law 87–725, 76 Stat. 673, with the intent "to make it clear that an appeal from, a reparation award of the Secretary shall not be effective as an appeal, *and therefore not a matter within the jurisdiction of the district court of*

*the United States* in which the petition is filed, unless the required bond is filed with the court within 30 days from and after the date of the Secretary's order." (Emphasis added.) H.R.Rep. 1546, 87th Cong., 2d Sess. (1962).

The standard to be applied to determine whether the bond requirement violates Guerin's Fifth Amendment guarantee of due process of law depends upon the nature of Geurin's interest which is adversely affected. If the affected interest is a fundamental right, it may not be frustrated by a legislative classification based on wealth in the absence of a "countervailing [governmental] interest of overriding significance." Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113.[1] The standard was phrased in terms of "a compelling governmental interest" in Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600.

If the affected interest is not considered to be a fundamental right, due process demands only that Congressional circumscription of the interest have some "reasonable basis." Dandridge v. Williams, 397 U.S. 471, 484–86, 90 S.Ct. 1153, 25 L.Ed.2d 491. *See*, James v. Valtierra, 401 U.S., 91 S.Ct. 1331, 28 L.Ed.2d 678; Boyden v. Commissioner of Patents, 441 F.2d 1041 (D.C.Cir.).

I.

We first must determine if a fundamental right of Geurin has been prejudiced by the bond requirement.

All brokers of perishable agricultural commodities as defined by the Act must be licensed by the Secretary. 7 U.S.C. § 499a, c, d. Once a reparation order is issued against a broker, the broker must either pay the reparation awarded, appeal therefrom to the District Court, or suffer the suspension of his license. 7 U.S.C. § 499g(d). A reparation order does not represent an enforceable obligation to make payment of a sum of mon-

---

1. See also orders entered by Supreme Court April 26, 1971, in Meltzer v. G. Buck LeCraw & Co., and related cases,

402 U.S. 954, 91 S.Ct. 1624, 29 L.Ed.2d 124.

ey. Thus, a broker who does not comply and who lacks sufficient assets to post the bond required for an appeal to the district court suffers only the suspension of his license. The suspension is effective from two to three years, after which the broker's privileges under the Act are restored fully. 7 U.S.C. § 499d(c).

The only interest of Geurin which is threatened by the bond requirement is the privilege of engaging in the business of a broker of perishable agricultural commodities during the next two or three years. This interest does not approach the fundamental nature of the rights at stake in Boddie v. Cennecticut, *supra*, (dissolution of marriage); Shapiro v. Thompson, 394 U.S. 618, 630, 89 S.Ct. 1322, 22 L.Ed.2d 600 (interstate travel); Harper v. Virginia Board of Elections, 383 U.S. 663, 667, 86 S.Ct. 1079, 16 L.Ed.2d 169 (vote); Smith v. Bennett, 365 U.S. 708, 712, 81 S.Ct. 895, 6 L.Ed.2d 39 (writ of habeas corpus); Griffin v. Illinois, 351 U.S. 12, 16, 76 S. Ct. 585, 100 L.Ed. 891 (appellate review of criminal conviction). The possible prejudice to Geurin is nothing more or less than a restriction of his available employment or business opportunities.

In Dandridge v. Williams, *supra*, the Supreme Court stated at 484–486, 90 S. Ct. at 1161–1162:

"For here we deal with state regulation in the social and economic field, not affecting freedoms guaranteed by the Bill of Rights * * *.

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 55 L.Ed. 369. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

"To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. * * * *It is a standard that has consistently been applied to state legislation restricting the availability of employment opportunities.* Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163; Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093. See also Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435." (Emphasis added.)

## II.

Since no fundamental right of the appellant is prejudiced, we need determine only if Congress had some "reasonable basis" for the bond requirement in light of the purpose of the Act.

The primary purpose of the Act was to provide a practical remedy to small farmers and growers who were vulnerable to the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities. *See,* H.R.Rep. 1041, 71st Cong.2d Sess. (1930).

The report of the Committee on Agriculture states:

"The general purpose of the bill is to regulate in interstate and foreign commerce the marketing of fresh fruits and vegetables, live and dressed poultry, and eggs. After rather extensive hearings it was developed before the committee that each year the shippers and growers of such commod-

ities suffer severe losses due to unfair practices on the part of commission merchants, dealers, and brokers. The practice on the part of irresponsible dealers of rejecting purchases of such commodities on a declining market is reported to the committee as causing heavy losses to the grower and shipper annually, particularly in the fruit and vegetable industry." *Id.* at 1.

Litigation had proved to be an ineffective and impractical remedy for most farmers and growers who had been mistreated by their brokers. The Committee found that:

"While recourse can be had to the courts for most, if not all, of the practices declared to be unfair by this bill, litigation is but seldom resorted to except in cases involving large sums. Litigation is frequently unsatisfactory as a practical matter. The commodities are highly perishable. In case of dispute immediate disposition must be made of them. Buyers and sellers are often hundreds and frequently thousands of miles apart. In such circumstances litigation is expensive.

"The farmer, small shipper, or the manager of a small cooperative association does not have the time or money to conduct the necessary investigation for successful prosecution. *Long delays occur in the adjudication of complaints, and frequently judgments can not be collected when awarded.* In many cases the amount of the loss suffered from the unfair practice does not warrant the cost of litigation, but taken in the aggregate, these losses are a tremendous burden upon these industries. It is believed that the regulation of interstate commerce transactions of commission merchants, dealers, and brokers as provided in this bill will provide an effective means of suppression and control of the fraudulent practices of which so much complaint is heard." (Emphasis added.) *Id.* at 2.

The Act attempts to remove the expense and inconvenience of court action to growers by providing for the filing of complaints with the Secretary who is required to investigate the complaint and render decisions in the form of reparation orders. 7 U.S.C. § 499f, g. A reparation order issued by the Secretary must set forth the Secretary's findings of fact and conclusions of law. 7 C.F.R. 47.41. The reparation order in the present case meets this requirement.

▪ The procedure authorized by the Act, and particularly as implemented by the Secretary, provides a reasonably fair and reliable means of settling disputes between farmers and brokers. *See,* 7 U.S.C. § 499f(c); 7 C.F.R. 47. It is not true here, as it was in Boddie v. Connecticut, *supra* at 383, that access to the courts is "the exclusive precondition to the adjustment" of the parties' rights.

Once the Secretary has determined in accordance with established procedures that a broker owes reparation to a farmer, the broker is classified for purposes of his right to appeal on the basis of his ability to guarantee payment of the reparation awarded, plus costs and the farmer's attorney's fees, if the order be upheld on appeal. We hold that the classification is reasonable in light of the purpose of the Act.

The bond requirement assures the farmer that he will be able to collect the judgment and his litigation expenses if the reparation order is upheld. Thus, the farmer is encouraged to defend the reparation order in the District Court and thereby to help discourage the sharp practices at which the Act was aimed. Since 7 U.S.C. § 499g(c) entitles the broker to a trial de novo in the District Court, the feasibility of litigation to the small farmer would have been enhanced very little by the passage of the Act without the bond requirement.

In addition, the bond requirement serves to insure that licensees under the Act do not continue in business unless they are financially capable of satisfying their potential liabilities. The Second Circuit in Zwick v. Freeman, 373 F.2d 110, 117, held that the Act was

generally intended to keep financially unsound persons from maintaining a license.

Viewed either as an instrument for making financially sound brokers accountable for their misconduct, or as a device for removal from the industry of financially unsound brokers, we hold that the bond requirement is reasonably related to the purpose of the Act.

Affirmed.