Leonard O'DAY, dba Leonard O'Day Company, Petitioner-Appellant,

v.

GEORGE ARAKELIAN FARMS, INC., a California Corporation, Respondent-Appellee,

United States of America, Intervenor.

No. 73–1361.

United States Court of Appeals, Ninth Circuit.

May 27, 1976.

David Victor (argued), Phoenix, Ariz., for petitioner-appellant.

Joseph L. Moore (argued), of Burch, Cracchiolo, Levie, Guyer & Weyl, Phoenix, Ariz., for respondent-appellee.

Barbara Herwig, Atty. (argued), Dept. of Justice, Washington, D. C., for intervenor.

Before TUTTLE,* MERRILL, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

Appellant challenges the constitutionality of the provision of the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499g(c), requiring a double bond to effectuate an appeal to a district court from a reparations award entered by the Secretary of Agriculture. The district court upheld the requirement. We reverse.

The principal purpose of the Perishable Agricultural Commodities Act is "to provide a practical remedy to small farmers and growers who were vulnerable to the

---

* Honorable Elbert Parr Tuttle, Senior United States Circuit Judge, Fifth Circuit, sitting by designation.

sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities." *Chidsey v. Guerin*, 443 F.2d 584, 587 (6th Cir. 1971).[1] Accordingly, certain conduct by commission merchants, dealers, or brokers is declared to be unlawful. 7 U.S.C. § 499b. All commission merchants, dealers, and brokers are required to be licensed. *Id.* § 499c. Any person may complain to the Secretary of Agriculture of an alleged violation of the statutory code of conduct. *Id.* § 499f. If after notice and hearing or default the Secretary determines that the licensee has violated the statutory code, he may order the offender to make reparations to the complainant. *Id.* § 499g(a). The licensee may appeal to a federal district court, but the appeal is not effective unless the appellant files "a bond in double the amount of the reparation awarded against the appellant conditioned upon the payment of the judgment entered by the court, plus interest and costs, including a reasonable attorney's fee for the appellee, if the appellee shall prevail." *Id.* § 499g(c). If the licensee does not perfect an appeal from the reparations order, or pay it, his license is suspended for a period of either two or three years. *Id.* §§ 499g(d), 499d(b)(D) & (c).

Appellee complained to the Secretary that appellant owed appellee $22,089.80 for twenty truckloads of lettuce. The Secretary found for appellee. Appellant filed a timely appeal from the Secretary's reparation order. In a petition and supporting affidavit accompanying the notice of appeal, appellant asserted that because of his financial condition he was unable to post a bond in the amount of $46,173.60, double

the amount of the damage award plus $997 costs, as required by section 499g(c). He further asserted that if his license to deal in perishable agricultural commodities were suspended it would be impossible for him to earn a living because his age precluded adoption of a new occupation. He asked that he be allowed to pursue his appeal without posting a double bond. He contended that, as applied to him, the double bond requirement violated due process and denied equal protection of the law because the amount required was far in excess of that needed to pay both the reparation award and appellee's attorneys' fees and expenses on appeal, and because this requirement, in practical effect, would deny appellant access to judicial review, result in the automatic suspension of his license, and leave him without a gainful occupation. The district court denied the petition and dismissed the appeal.[2]

■ Appellant's claim does not fall within the rationale of *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Appellant was afforded a full and fair administrative hearing before the Secretary ordered him to pay appellee or suffer suspension of his license. He was represented by counsel and presented witnesses before a neutral hearing officer who issued a lengthy written opinion discussing the facts and applying the law. Appellant does not challenge the adequacy of this hearing. The double bond requirement may bar judicial review, but it does not exclude appellant "from the only forum effectively empowered to settle" his dispute. *Boddie v. Connecticut, supra*, 401 U.S. at 376, 91 S.Ct.

1. Existing judicial remedies were considered inadequate. House Rep.No.1041, 71st Cong., 2d Sess. at 2 (1930), states:

> While recourse can be had to the courts for most, if not all, of the practices declared to be unfair by this bill, litigation is but seldom resorted to except in cases involving large sums. Litigation is frequently unsatisfactory as a practical matter. The commodities are highly perishable. In case of dispute immediate disposition must be made of them. Buyers and sellers are often hundreds and frequently thousands of miles apart. In such circumstances litigation is expensive.

> The farmer, small shipper, or the manager of a small cooperative association does not have the time or money to conduct the necessary investigation for successful prosecution. Long delays occur in the adjudication of complaints, and frequently judgments can not be collected when awarded. In many cases the amount of the loss suffered from the unfair practice does not warrant the cost of litigation, but taken in the aggregate, these losses are a tremendous burden upon these industries.

2. The district court stayed its judgment pending appeal to this court.

at 785.[3] *See Ortwein v. Schwab*, 410 U.S. 656, 658–60, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); *Chidsey v. Guerin, supra*, 443 F.2d at 588; *cf. Bell v. Burson*, 402 U.S. 535, 542–43, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 266, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Nor is the deprivation appellant faces of the same constitutional significance as the interest at stake in *Boddie*. *See Chidsey v. Guerin, supra*, 443 F.2d at 587; *Zwick v. Freeman*, 373 F.2d 110, 117–19 (2d Cir. 1967); *cf. United States v. Kras*, 409 U.S. 434, 444–45, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Ortwein v. Schwab, supra*, 410 U.S. at 659, 93 S.Ct. 1172.

The rationale of *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), however, entitles appellant to relief. The Court held that the Equal Protection clause was violated by a provision of the Oregon Forcible Entry and Wrongful Detainer Statute requiring a lessee who wished to appeal to file a bond for the payment of twice the rental value of the premises from the time the action was commenced until final judgment. "When an appeal is afforded," the Court said, "it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause." *Id.* at 77, 92 S.Ct. at 876. The Court noted "that the double-bond requirement heavily burdens the statutory right . . . to appeal." While the state could require adequate security to preserve an award already made and otherwise protect appellee against loss during appeal, the Court observed that the double bond requirement did not effectuate these purposes in the circumstances presented in *Lindsey*. *Id.* at 77–78, 92 S.Ct. 862. The claim that the double bond requirement screened out frivolous appeals was also "unpersuasive, for it not only bars

nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond." *Id.* at 78, 92 S.Ct. at 876.

Procedural provisions to protect litigated property and discourage unsubstantial appeals are valid, the Court said, if "reasonably tailored to achieve these ends and uniformly and nondiscriminatorily applied." But the state did not seek to protect the prior award. Instead, it "automatically doubled the stakes when a tenant seeks to appeal an adverse judgment . . . . *Id.* at 79, 92 S.Ct. at 877. This discriminated against those who could not post a double bond. "For them, as a practical matter, appeal is foreclosed, no matter how meritorious their case may be." *Id.* at 79, 92 S.Ct. at 877. Nonindigent lessees were also aggrieved for they were "confronted by a substantial barrier to appeal faced by no other civil litigant . . . ." This discrimination, the Court concluded, was "arbitrary and irrational," and therefore violated the Equal Protection Clause. *Id.* at 79, 92 S.Ct. at 877.

Since the Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment" (*Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 1228, 43 L.Ed.2d 514 (1975); *see also Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *cf. Hampton v. Mow Sun Wong*, —— U.S. ——, ——, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), the same reasoning applies to the double bond requirement of the Perishable Agricultural Commodities Act. As applied to the appellant in this case, the double bond requirement is not reasonably or rationally related to a legitimate governmen-

---

**3.** Nor does failure to post the bond preclude eventual judicial reexamination of the reparation award. The administrative award is not an enforceable judgment. If the offender does not pay, the offender loses his license for either two or three years, 7 U.S.C. § 499d(c), but the complainant must still sue on the claim in a state or federal court to collect the award. In this judicial proceeding the merits of the claim are determined de novo except that the findings and order of the Secretary constitute prima facie evidence of the facts recited. 7 U.S.C. § 499g(b). Thus, the effect of failure to post the double bond, or to pay the claim, is that the offender's license is suspended for the stipulated period. *See Chidsey v. Guerin*, 443 F.2d 584, 586–87 (6th Cir. 1971).

tal purpose and constitutes an effective bar to appeal. It therefore arbitrarily denies appellant and similarly situated litigants the statutory right to appeal.

The stated purpose of the double bond requirement was "to discourage frivolous appeals taken for the purpose of delaying payment and thereby tending to defeat the purpose of the act." House Report No. 915, 75th Cong., 1st Sess., at 3 (1937). As noted, *Lindsey* expressly held that there is no rational relation between this admittedly legitimate purpose and a double bond requirement.

■ The statute recites that the bond shall be "conditioned upon the payment of the judgment entered by the court, plus interest and costs, including a reasonable attorney's fee for the appellee, if appellee shall prevail." 7 U.S.C. § 499g(c). As *Lindsey* recognizes, the state may properly condition the right to appeal upon posting security sufficient to protect appellee from loss of damages already awarded, interest, and (as established by *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 552, 69 S.Ct. 1221, 93 L.Ed. 1528 (1941)) costs on appeal, including a reasonable attorney's fee.[4]

4. The United States, participating as an intervenor, suggests that by his own admission appellant is too impecunious to afford a clearly lawful bond equal to the reparations award and appellate costs. As appellant points out, however, the issue was not raised below, and appellant has had no opportunity to demonstrate whether he could post a bond in any amount less than double the award plus costs.

5. *See also United States Department of Agriculture v. Murry*, 413 U.S. 508, 513–14, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); *Jimenez v. Weinberger*, 417 U.S. 628, 636–37, 94 S.Ct. 628, 41 L.Ed.2d 363 (1974); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

6. In certain respects, the double bond involved in *Lindsey* was less justifiable than the double bond involved in the present case. The *Lindsey* double bond was unnecessary to protect the appellee against the risk of loss because a general appeal bond was also required and other statutory remedies were available to protect the appellee from loss of rent or waste or damage to the property. 405 U.S. at 77–79, 92 S.Ct. 862. The Supreme Court did not rest upon this alone, however. The Court relied

■ *Lindsey* also makes clear, however, that the requirement imposed must be rationally related to securing the risk involved. Legislative categories need not be drawn with "mathematical nicety" (*Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)), for classification necessarily involves approximation; but legislative classifications which are not only imprecise, but lack rational relationship to their avowed purpose, are invalid. *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 538, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).[5]

To the extent that the bond required by section 499g(c) reflects the amount of the reparation award it directly serves a valid purpose. The automatic doubling of this amount, however, has no rational relationship to the payment of interest on the award and costs of appeal. If the claim is small the product will be wholly inadequate; if the claim is large, as in this case, it will be grossly excessive. Risk and security will coincide only fortuitously if at all.[6]

*Chidsey v. Guerin, supra*, 443 F.2d 584, upholds the double bond requirement of the Perishable Agricultural Commodities Act as

also upon the fact that the amount of the bond was necessarily arbitrary because it was fixed by automatically doubling the amount of the rent. Under the statute involved in *Lindsey*, appellee retained the full amount of the bond (double the rental value during appeal) without proof of actual damage if the judgment was affirmed; under section 499g(c) appellee is guaranteed only the amount of the award and costs. Whether the ultimate burden upon the right to appeal will be greater under the *Lindsey* statute or the statute here depends upon the circumstances of the particular case. In any event, the amount of the double bond required in this case would be beyond the reach of many litigants. Appellant's uncontradicted affidavit asserts that he is entirely unable to obtain a bond of $46,173—double the reparations award plus costs. (In his brief, appellant states that he must pledge "cash, marketable securities or the like, as collateral in the full amount of the double bond" in order to obtain the bond "as a practical matter.") Thus, for this appellant, no less than for the appellants in *Lindsey*, "as a practical matter, appeal is foreclosed, no matter how meritorious [his] case may be." 405 U.S. at 79, 92 S.Ct. at 877.

applied to a case involving a reparations award of $960. The decision in *Chidsey* preceded *Lindsey*. In any event, the result is not inconsistent with the conclusion we reach here. A bond of $1,920 imposes a relatively small burden upon the right of appeal of litigants of the class involved here. Moreover, a bond in such an amount might well approximate the security required to protect the prior award of $960 plus costs on review, including a reasonable attorney's fee. Indeed, with respect to this purpose of the double bond, the Sixth Circuit placed its ruling on precisely this ground.[7] This is a far cry, however, from a holding that a bond double the amount of a $23,000 award bears a rational relationship to securing such costs and does not substantially burden the right of appeal.

The Sixth Circuit also suggested that "the bond requirement serves to insure that licensees under the Act do not continue in business unless they are financially capable of satisfying their potential liabilities." *Chidsey v. Guerin, supra*, 443 F.2d at 588. This suggestion was drawn from *Zwick v. Freeman*, 373 F.2d 110, 117 (2d Cir. 1967). But *Zwick* was not concerned with the double bond requirement. The question before the court in *Zwick* was whether provisions of the Act, which bar persons "responsibly connected" with an offending licensee from obtaining employment from another licensee for a period of a year (7 U.S.C. § 499h(b)), were so inconsistent with the purpose of the Bankruptcy Act that bankrupts should be excluded from its application. The court said, "We cannot lightly infer that Congress intended to exempt bankrupts from being subject to these provisions of the Commodities Act when such an exemption would be extremely damaging to the goal of the Commodities Act that only financially responsible persons should be engaged in businesses subject to the Act." 373 F.2d at 117. The Court did not suggest that the double bond requirement had any such goal. The presence of other provisions specifically directed to assuring the financial responsibility of licensees[8] argues against the conclusion that the double bond provision "could rationally have been intended to prevent those very same abuses." *United States Department of Agriculture v. Moreno, supra*, 413 U.S. at 537, 93 S.Ct. at 2827.

A cost requirement valid on its face may offend the Constitution as applied to a particular case. *Boddie v. Connecticut, supra*, 401 U.S. at 380, 91 S.Ct. 780. Since Congress has clearly manifested its intention to require a bond sufficient to secure payment of the reparation award, interest, and costs on appeal, including reasonable attorneys' fees;[9] since the remaining question (the appropriate amount of such a bond) is peculiarly within judicial rather than legislative expertise; and since Con-

7. The court said:
    Once the Secretary has determined in accordance with established procedures that a broker owes reparation to a farmer, the broker is classified for purposes of his right to appeal on the basis of his ability to guarantee payment of the reparation awarded, plus costs and the farmer's attorney's fees, if the order be upheld on appeal. We hold that the classification is reasonable in light of the purposes of the Act.
    The bond requirement assures the farmer that he will be able to collect the judgment and his litigation expenses if the reparation order is upheld.
*Chidsey v. Guerin*, 443 F.2d 584, 588 (6th Cir. 1971).

8. For example, 7 U.S.C. § 499d(b)(D) provides that the Secretary shall refuse to license an applicant who has failed to pay a reparation order within two years of application; and 7

U.S.C. § 499d(c) provides that on the expiration of two years, such an applicant may be licensed if he furnishes a bond in the form and amount satisfactory to the Secretary "as assurance that his business will be conducted in accordance with this chapter and that he will pay all reparation orders which may be issued against him in connection with transactions occurring within four years following the issuance of the license . . . ." The section further provides that "[t]he Secretary, based on changes in the nature and volume of business conducted by a bonded licensee, may require an increase or authorize a reduction in the amount of the bond." *See also id.* § 499h(b).

A licensee may lose his license upon a determination of bankruptcy (7 U.S.C. § 499d(a)); a potential licensee may be refused a license on similar grounds. 7 U.S.C. § 499d(e).

9. *See* note 1 *supra;* 7 U.S.C. § 499q(c).

gress has expressly provided that the statute is to be upheld in any application in which it is valid (7 U.S.C. § 499q), the statutory provision may be sustained to the extent that it requires such a bond even though it must be invalidated to the extent that it requires a double bond not approximating this amount. *Cf. United States v. Thirty-Seven Photographs*, 402 U.S. 363, 372, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

The judgment is reversed and the case remanded. Upon appellant's petition the district court will fix a bond in the amount of the reparations award and appellee's reasonably expected costs, interest, and attorney's fees on appeal. Upon the posting by appellant of a bond in the amount fixed, the court will proceed to adjudicate the claim as provided in the statute.