670 F.2d 49
 Robert MYRON, Alan Freeman, Leslie Rosenthal and Richard
Mortell, d/b/a Rosenthal & Company, Petitioners
Cross-Respondents,
v.
Gerald C. MARTIN and Commodity Futures Trading Commission,
Respondents Cross-Petitioners.
 No. 80-2146.
 United States Court of Appeals,
Fifth Circuit.
 March 12, 1982.
 
 Louis C. Burr, Chicago, Ill., for petitioners cross-respondents.
 Nicholas Carbajal, Houston, Tex., for Martin.
 Gregory C. Glynn, Asst. Gen. Counsel, David R. Merrill, Elizabeth M. Knoblock, Paul M. Architzel, Attys., Commodity Futures Trading Comn., Washington, D. C., for Commodity Futures Trading Comn.
 Petition for Review and Cross Application for Enforcement of an Order of the Commodity Futures Trading Commission.
 Before COLEMAN, REAVLEY and SAM D. JOHNSON, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 Respondents Robert Myron, Alan Freeman, Leslie Rosenthal and Richard Mortell, d/b/a/ Rosenthal & Co. (collectively "Rosenthal") seek review under 7 U.S.C. § 18(g) of an order of the Commodity Futures Trading Commission ("Commission") issued in a reparation proceeding conducted pursuant to 7 U.S.C. § 18. In its order the Commission denied review of a decision by an administrative law judge ("ALJ") which awarded Gerald C. Martin reparation plus interest. The ALJ based his decision[1] upon a violation of Commission rule 32.9, 17 C.F.R. § 32.9 (1981),[2] a finding the Commission left undisturbed. With the Commission's order denying review, the ALJ's decision became final, prompting Rosenthal's appeal. We affirm.
 
 
 2
 This dispute flows from the sale by Rosenthal to Martin of two London sugar call options.[3] In July 1976, Martin received an unsolicited telephone call from Jay Sills, a registered associated person[4] employed by Rosenthal & Co. at its Houston office, who interested Martin in purchasing a London sugar option. Martin subsequently purchased a March 1977, London call option for the total cost of $4,458.94. That same day Martin, a novice in securities and commodities trading, opened an unrelated account for trading commodity futures contracts with another firm.[5] Two days later Martin signed a number of documents received from Rosenthal, one of which was a disclosure statement. From July until September the fortuneless Martin, often conferring with Sills, watched the sugar market decline.
 
 
 3
 Sometime in September 1976, Martin discovered that Sills had left Rosenthal & Co. and that John Anderson, an associated person and employee of Rosenthal & Co., had taken over his account. At Anderson's urging, Martin purchased another option, this time a May 1977, London sugar call option at a total cost of $3,011.90. In due time, both of the options expired and Martin lost his entire investment.
 
 
 4
 The ALJ held that Rosenthal violated the Commission's anti-fraud regulation, 17 C.F.R. § 32.9 (1981), in that Rosenthal misrepresented to Martin the risks involved in trading London sugar options. Fantastic sugar profits were described, anywhere from $30,000 to $60,000, with virtually no chance of a loss. Moreover, the sugar market was pictured as being on the verge of skyrocketing. Against this tableau, the ALJ held that Rosenthal's risk disclosure was similar to the disclosure in Kelley v. Carr, where the "disclosure of risk was not emphasized, indeed it was generally omitted entirely." 442 F.Supp. 346, 354-55 (W.D.Mich.1977). Ordered to pay Martin reparations, Rosenthal filed its unsuccessful petition with the Commission for a review of the order. In this court Rosenthal principally makes two arguments: first, the Commission erred in that a violation of Commission rule 32.9, 17 C.F.R. § 32.9 (1981), requires a finding of willfulness or scienter; second, the requirement in 7 U.S.C. § 18(g) that an aggrieved and appealing party post a bond for double the amount of the award deprives Rosenthal of equal protection.[6]
 
 
 5
 In response to Rosenthal's first argument, the Commission contends that Rosenthal's failure to raise before the Commission the issue of whether a violation of Commission rule 32.9, 17 C.F.R. § 32.9 (1981), must be willful precludes our consideration of that issue. As a general rule, in considering a petition for review from a final agency order, the courts will not consider questions of law which were neither presented to nor passed on by the agency. United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 36-37, 73 S.Ct. 67, 68-69, 97 L.Ed. 54 (1952); Board of Public Instruction v. Finch, 414 F.2d 1068, 1073 (5th Cir. 1969). Practical notions of judicial efficiency, administrative autonomy and encouraging effective agency procedures provide the basis for the general rule. McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969).
 
 
 6
 Rosenthal candidly admits that the issue of willfulness was not the subject of the initial decision and that on review of the decision it did not raise the issue before the Commission.[7] Rosenthal, however, makes two arguments in its attempt to avoid the general rule. Rosenthal first argues that because the Commission raised the willfulness issue in its opinion and order reviewing the ALJ's decision, Rosenthal did not have notice and a fair opportunity to respond to that issue. As a result, Rosenthal contends it can raise the scienter issue for the first time before this court. Rosenthal also argues that it raised the scienter issue in the administrative proceedings in its answer to Martin's complaint. In the answer, Rosenthal asserted as an affirmative defense its contention that the reparation proceedings violated due process.
 
 
 7
 We find Rosenthal's arguments meritless. In making its first argument Rosenthal fails to refer the court to language in the Commission's order raising the issue of scienter. It does so for good reason: the order does not advance the issue. The Commission merely reviewed the ALJ's decision. Nor is the second contention any stronger. Nothing in Rosenthal's "due process" contention before the Commission was in any way related to the question of whether the Commission rule embodies the scienter requirement.
 
 
 8
 The general rule of nonreviewability is not absolute. In exceptional circumstances a court will review for the first time on appeal a particular challenge to an agency's decision which was not raised during the agency proceedings. Board of Public Instruction v. Finch, 414 F.2d at 1072-73. In Finch this court found an exception to the general rule after determining that the action of the agency was (1) in excess of statutory authority, (2) likely to result in individual injustice, (3) disruptive of the legislative scheme and (4) contrary to an important public policy extending beyond the rights of the individual litigants. Id. at 1073. After considering each of the Finch factors, however, we feel that they are inapplicable in the instant case. Consequently the general rule applies and precludes our consideration of whether a violation of Commission rule 32.9, 17 C.F.R. § 32.9 (1981), requires scienter. We now turn to Rosenthal's equal protection argument.
 
 
 9
 Rosenthal's equal protection contentions center around 7 U.S.C. § 18(g), a provision requiring the party appealing from a reparation order entered by the Commission to post a bond in double the amount of the reparation award. Rosenthal argues that the double bond requirement as applied to commodity professionals, such as itself, is a prima facie denial of equal protection since the Commission only orders commodity professionals to pay reparation awards, and thus only commodity professionals must post a double bond in order to appeal the Commission's reparation orders. A review of the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq., and the Commission rules, however, reveals that Rosenthal's prima facie violation argument has no merit. Commission rule 12.23(b)(2), 17 C.F.R. § 12.23(b)(2) (1981),[8] authorizes registered commodity professionals to file counterclaims in reparation proceedings, making possible recovery by a registered commodity professional against the complainant. Moreover, the double bond language in 7 U.S.C. § 18(g) does not limit the posting of a double bond to commodity professionals; rather, it requires "the appellant" to post a double bond.[9] Consequently, if a commodity customer seeks judicial review of a Commission order requiring the customer to pay a reparation award to a registered commodity professional, the customer must file a bond in double the amount of the award. In contrast with 7 U.S.C. § 18(g), other subsections of 7 U.S.C. § 18 explicitly refer to registered commodity professionals and reflect Congress' intent that they apply solely to those professionals. Compare 7 U.S.C. § 18(g) ("appellant also files with the clerk of the court a bond ...") with 7 U.S.C. § 18(a) ("any violation ... by any person who is registered or required to be registered ...") and 7 U.S.C. § 18(h) ("Unless the registrant against whom a reparation order has been issued ..."). Since the double bond requirement applies equally to all persons whom the Commission has ordered to pay a reparation award, Rosenthal is not denied equal protection.
 
 
 10
 In addition to its prima facie equal protection argument, Rosenthal implies that the bond requirement violates the principle of equal protection implicit in the due process clause of the Fifth Amendment, relying heavily on O'Day v. George Arakelian Farms, Inc., 536 F.2d 856 (9th Cir. 1976). By discussing O'Day, Rosenthal implies that the instant double bond requirement violates equal protection in that it impermissibly denies indigents an appeal from a Commission reparation order.
 
 
 11
 Its argument, however, is not its case. Unlike the appellant in O'Day, who, due to an alleged lack of financial resources, did not file a double bond as required by statute,[10] Rosenthal filed a double bond. Indeed, Rosenthal does not argue financial hardship. Generally "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960); accord, McGowan v. Maryland, 366 U.S. 420, 429, 81 S.Ct. 1101, 1107, 6 L.Ed.2d 393 (1961). Rosenthal cannot assert another's cause.[11]
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 The ALJ's decision appears at (1977-1980 Transfer Binder) Comm.Fut.L.Rep. (CCH) P 20,638
 
 
 [2]
 17 C.F.R. § 32.9 (1981) states as follows:
 Fraud in connection with commodity option transactions.
 It shall be unlawful for any person directly or indirectly-
 (a) To cheat or defraud or attempt to cheat or defraud any other person;
 (b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof;
 (c) To deceive or attempt to deceive any other person by any means whatsoever;
 in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction.
 
 
 [3]
 The two sugar call options were commodity options. A "commodity option" is a contractual right to buy, or sell, a commodity or commodity future at a specified date and for a specified price, known as the "striking price." A "call" is a contract entitling its owner to purchase the commodity. For an insightful discussion of the commodity options industry, see British American Commodity Options Corp. v. Bagley, 552 F.2d 482, 484-85 (2d Cir.), cert. denied, 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977)
 
 
 [4]
 An "associated person" is a person associated with a futures commission merchant (Rosenthal & Co. in this case). The Commodity Exchange Act, 7 U.S.C. §§ 1 et seq., requires registration of all futures commission merchants, 7 U.S.C. § 6d, and associated persons, 7 U.S.C. § 6k
 
 
 [5]
 Martin deposited a total of $5,000 with the other firm and eventually lost $3,500 of that amount
 
 
 [6]
 Rosenthal also argues that while 7 U.S.C. § 18(a) requires the Commission to determine that Rosenthal violated the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq., in its order the Commission does not state which section of the Act was violated. Rosenthal's argument misconstrues the Act and is without merit: 7 U.S.C. § 18(c) states the Commission shall determine whether the respondent violated a provision of the Act or any rule or regulation promulgated under the Act. The ALJ found Rosenthal in violation of Commission rule 32.9, 17 C.F.R. § 32.9 (1981), a decision which became the Commission's final decision. Thus, in finding Rosenthal in violation of 17 C.F.R. § 32.9 (1981), the Commission complied with the Act
 
 
 [7]
 The Commission's review of the ALJ's decision is limited to "only the issues presented for review set forth in the application, and all subsidiary issues subsumed therein ...." 17 C.F.R. § 12.101(c) (1981). As noted in the text, Rosenthal admits it did not raise the scienter issue in its application for review of the ALJ's decision
 
 
 [8]
 17 C.F.R. § 12.23(b)(2) (1981) reads as follows:
 Counterclaims. An answer may set forth as a counterclaim facts alleging a violation and a request for a reparation award that would be a proper subject for a complaint under § 12.21 or any claim which at the time the complaint is served the registrant has against the complainant if it arises out of the transaction or occurrence or series of transactions or occurrences set forth in the complaint.
 
 
 [9]
 7 U.S.C. § 18(g) states in part as follows:
 Any order of the Commission entered hereunder shall be reviewable on petition of any party aggrieved thereby, by the United States Court of Appeals for any circuit in which a hearing was held, or if no hearing was held, any circuit in which the appellee is located, under the procedure provided in section 9 of this title. Such appeal shall not be effective unless within 30 days from and after the date of the reparation order the appellant also files with the clerk of the court a bond in double the amount of the reparation awarded against the appellant conditioned upon the payment of the judgment entered by the court, plus interest and costs, including reasonable attorney's fee for the appellee, if the appellee shall prevail .... (emphasis added).
 
 
 [10]
 O'Day involved an equal protection and due process challenge to the double bond requirement of the Perishable Commodities Act of 1930, 7 U.S.C. § 499g(c). The O'Day double bond requirement is very similar to the double bond requirement at issue in the instant case
 
 
 [11]
 Rosenthal argues for the first time in its reply brief that the Commission, in not considering the record as a whole, deprived it of due process of law. Rosenthal asserts that the Commission disregarded the evidence of risk disclosure which was part of the record. Tardiness of this argument aside, a reading of the decisions below show that the argument has no merit. Both the ALJ's decision and the Commission's order denying the review take into account the risk disclosure