In re Jason **BOREK**, Debtor.

**Marcia T. Dunn, Trustee, Plaintiff,**

v.

**Weis–Buy Services, Inc. and Charles Weisinger, Defendant.**

Bankruptcy No. 99–11741–BKC–RAM. Adversary No. 00–1136.

United States Bankruptcy Court, S.D. Florida, Miami Division.

April 4, 2001.

Marcia T. Dunn, Miami, FL, trustee.

Michael Keaton, Glen Ellyn, IL, Jay M. Gamberg, Hollywood, FL, for defendants.

Robert M. Hustead, Hustead & Magolnick, P.A., Homestead, FL, for plaintiff.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

The Trustee in this chapter 7 case, Marcia T. Dunn ("Trustee"), filed this adversary proceeding against Defendants Weis–Buy Services, Inc. and Charles Weisinger. In her complaint, the Trustee states that the Defendants are licensed brokers under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C.A §§ 499a–499t (West 1999). The Trustee alleges that while acting as broker for Jason Borek ("Debtor") to sell the Debtor's crop of tomatoes, the Defendants charged a commission to both the Debtor and the buyer in thirty separate transactions in May 1998 in violation of PACA regulations. Pursuant to PACA regulations, the Trustee contends that the Defendants are liable to return all commissions paid in connection with the transactions in question. Weis–Buy and Weisinger filed an answer to the complaint which denies all of the Trustee's allegations.

Trial was held in Miami, Florida, on October 5, 2000, and after hearing the evidence and arguments of counsel, the Court granted judgment in favor of Charles Weisinger individually and took the matter under advisement as to the liability of Weis–Buy.

The Court has jurisdiction under 28 U.S.C. § 1334 and § 157. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O), and the Court may enter a final judgment in the case. The following shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The relevant facts are not in dispute. The Debtor, doing business as J & B Farms, produced a crop of tomatoes in the spring of 1998 in Dade County, Florida. While his crop was still in the field, the Debtor contacted Weisinger, President of Weis–Buy, to discuss a possible purchase of his crop. Weis–Buy is a broker of perishable commodities and at all relevant times was the holder of a valid broker's license in accordance with PACA requirements and federal regulations.

After some negotiation, Weis–Buy and the Debtor reached an agreement regarding the crop. The parties agreed that Weis–Buy would arrange to have the crop harvested, transported to a packing house, and packed for shipment to the ultimate purchaser. As evidenced by a short written memorandum, the parties agreed that for the services described above, the Debtor would pay "$2.50 [a box] for packing. There will also be picking and freight charges as well as 10% per package [charge] for sales." (Defs.' Ex. A.)

Weis–Buy also used its own funds to pay third parties for the cost of having the tomatoes harvested and transported from Homestead, Florida, to Immokalee, Florida. The tomatoes were then degreened (gassed), packed and loaded by Tomato Man, Inc., the packing house. Tomato Man, Inc.'s fees were also paid by Weis–Buy with its own funds.[1] Weis–Buy paid expenses with the understanding that it would be reimbursed from sale proceeds of the crop.

Weisinger testified that the services just described are not typical broker services. Weisinger also testified that he and the Debtor agreed that in his capacity as broker, he would attempt to get the highest price he could for the tomatoes, that he would charge a sales commission per box, and that the commission would be paid by the buyer, not the Debtor. He stated that the Debtor agreed orally to these terms.

Thereafter, the tomatoes were sold and delivered to various buyers. The parties stipulated that the total brokerage commissions collected by Weis–Buy from purchasers of the crop equaled $6,452.40 and that the 10% fee for Weis–Buy's facilitation of harvesting, transporting, and packing totaled $26,114.65. Weis–Buy received the total sum of $407,097.80 in proceeds from the sale of the tomatoes.

At some point in time not shown by the record, several creditors of the Debtor began making claims against Weis–Buy to the proceeds. Ultimately, Weis–Buy filed an interpleader action in state court, which was subsequently removed to federal court. After the Debtor filed for chapter 7 relief, Weis–Buy remitted the proceeds to the Trustee, less brokers' commissions, Weis–Buy's 10% fee, and other expenses incurred by Weis–Buy in the course of harvesting, transporting, and packing the tomatoes. The amount remitted was $221,783.85.

In this action, the Trustee maintains that Weis–Buy should be required to disgorge its $26,114.65 fee as well as the $6,452.40 in brokers' commissions it charged the ultimate purchaser of the tomatoes. The Trustee contends that Weis–Buy charged a commission to the Debtor, who was the seller, and to the buyer without the mutual consent of both the buyer and seller in violation of 7 U.S.C. § 499e and 7 C.F.R. § 46.28(b). The Trustee also seeks recovery of the packing charges paid in excess of those originally agreed upon by the parties.

## DISCUSSION

The Eighth Circuit Court of Appeals explained the background of the statutory scheme of PACA and its regulations as follows:

> The original PACA enactments served "to provide a practical remedy to small farmers and growers who were vulnerable to the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities." ... To that end, PACA requires that buyers make "full payment promptly" for all commodities received from produce suppliers.... Failure to satisfy the prompt payment rules gives rise to civil liabilities in favor of the injured seller ... and repeated or flagrant violations may result in the revocation of a buyer's agricultural license.

*Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 780 (8th Cir.1991) (quoting *Chidsey v. Geurin*, 443 F.2d 584, 587 (6th Cir.1971); 7 U.S.C. § 499b(4) (1988) and citing 7 U.S.C.

---

1. The packing and gassing charged by Tomato Man, Inc. to Weis–Buy turned out to be $3.00 per box rather than $2.50. Thus, the Debtor was charged $3.00 per box, which was satisfactory to the Debtor, according to Weisinger.

§ 499e(a) & h(a) (1988); *O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856 (9th Cir.1976); *In re The Caito Produce Co.*, 48 Agric.Dec. ____, No. D. 88–511, slip op. (June 11, 1989); *In re Carpenito Bros.*, 46 Agric. Dec. 486 (1987), *aff'd*, 851 F.2d 1500, 1988 WL 76618 (D.C.Cir.1988)).

The court in *Hull* observed that

While PACA has generally worked well in making the marketing of perishable agricultural commodities more orderly and efficient, ... Congress nevertheless amended PACA in 1984 to provide additional protection to produce sellers. Congress recognized that, under the prevailing law, "sellers of fresh fruits and vegetables [were] unsecured creditors and receive[d] little protection in any suit for recovery of damages where a buyer ha[d] failed to make payment as required by the contract." ... The statutory amendments made a legislative finding that financing arrangements made by commission merchant dealers and brokers who have not made payment for the goods deprive suppliers of payment and disserve the public interest.

*Hull*, 924 F.2d at 780 (citing H.R.Rep. No. 543, 98th Cong., 2d Sess. (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 406–407 (H.R.Rep. No. 543); 7 U.S.C. § 499e(c)(1) (1988)).

The Eighth Circuit Court of Appeals noted that Congress amended PACA in an attempt to remedy the plight of the unsecured seller so that

produce sellers' interests in the commodities [are] superior to those of the buyers' secured creditors. Under the amendments, buyers of perishable agricultural commodities are now required to hold the purchased commodities, and any resulting proceeds, in trust for the benefit of the sellers until the sellers are paid in full ... The statutory history indicates that the trust imposed on the

assets of a buyer of perishable commodities related to those supplying credit on a short term basis. Congress left the specifics to the regulatory discretion of the USDA, including the task of prescribing the time "by which payment must be made."

*Hull*, 924 F.2d at 780–81 citing and quoting 7 U.S.C. § 499c(c)(2) & (3) (1988); *In re Davis Distrib., Inc.*, 861 F.2d 416, 417 (4th Cir.1988). *See also, Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3rd Cir.1998) (observing that PACA was enacted to protect unpaid supplies of produce).

The Trustee here does not allege that she is the Trustee for an unpaid producer of commodities or that creditors of the buyer of the commodities have made claims to the sale proceeds of the producers' commodities. The complaint alleged only that Weis–Buy charged a commission to both the buyer and seller. The Trustee asserts that such conduct is a violation of 7 U.S.C. § 499e and that a violation entitles the Trustee to deny the broker any compensation arising out of the sale of the Debtor's crop.

Furthermore, the Trustee argues that Weis–Buy breached its contract with the Debtor when it charged the Debtor $3.00 a box for packing tomatoes when the parties had previously agreed to a charge of $2.50 per box. Finally, the Trustee argues a third ground not previously alleged in the complaint. This allegation is that Weis–Buy failed to make a sufficient written accounting of all the transactions as required by the regulations issued by the Department of Agriculture pursuant to PACA. The Trustee contends that Weis–Buy's failure to account in writing results in a forfeiture of all commissions.

### TEN PERCENT FEE

As previously stated, Weis–Buy charged the Debtor a 10% fee for services

performed by Weis–Buy that were beyond the scope of a typical transaction between a seller and a broker of perishable commodities. In consideration for the Debtor's payment of a 10% fee, Weis–Buy undertook the responsibility to harvest the Debtor's tomato crop and to transfer the crop to a packing house for gassing and packing. Weis–Buy hired these services from third parties and paid for these services with its own funds. There is no allegation or evidence that Weis–Buy failed to satisfactorily perform its agreement with the Debtor as to the services performed.

Significantly, the evidence was undisputed that the Debtor consented to the agreement and received the anticipated benefit; i.e., his crop was harvested and made ready to be sold. The only witness to testify, Weisinger stated that these types of services are not the traditional services of a broker and that the 10% charge was reasonable. The Trustee offered no evidence to the contrary, only argument.

Weisinger also testified that Weis–Buy charged a brokerage commission for finding a buyer and selling the crop, that the commission was charged to the buyer, not the Debtor, and that the Debtor agreed to this procedure. The documentary evidence supports Weisinger's statements and establishes that the crop was sold by Weis–Buy pursuant to its agreement with the Debtor. The evidence also establishes that the commissions are documented on the invoices to buyers of the crop, that Weis–Buy has received the proceeds from the sale of the crop, and that Weis–Buy has paid the agreed expenses and remitted the net proceeds to the Trustee of the Debtor except for the charges in question.

There is no reasonable basis in the evidence to find that the 10% charge was for a brokerage commission instead of a fee for non-brokerage services performed by Weis–Buy. Since brokerage fees were not charged to both buyer and seller, no violation of § 499 of title seven of the United States Code occurred.[2]

## BREACH OF CONTRACT

■ The argument by the Trustee that Weis–Buy breached its contract with the Debtor by charging $3.00 a box to pack the tomatoes rather than $2.50 is not supported by any evidence. Weisinger testified that he and the Debtor agreed that the packing charge (performed by Tomato Man, Inc.) would be $2.50 a box, but later Tomato Man, Inc., refused to perform the service unless it was paid $3.00 a box. Weisinger contacted the Debtor and the Debtor agreed to the $3.00 a box charge. Weis–Buy paid Tomato Man, Inc. and the Debtor paid Weis–Buy. There is no evidence of any breach of contract.

## FAILURE TO PROVIDE WRITTEN MEMORANDA

The federal regulations promulgated in connection with PACA provide:

2. In connection with PACA, the federal regulations provide in part: "Brokerage fees may be charged to only one of the parties to the contract unless by prior agreement the parties agree to split the brokerage fee. If the brokerage fee is charged to both parties without a specific prior agreement, such action by the broker is a violation of the Act." 7 C.F.R. 46.28(b) (2000). Even if the Court were to construe both of these fees as brokerage commissions, the Debtor and, therefore, his Trust-

ee in bankruptcy would have no cause of action because the Debtor agreed to the transaction, received the benefit, and suffered no harm. Proof of damages is a prerequisite to recovery for a PACA violation. 7 U.S.C.A. § 499e(a) (West 1999) ("If any ... broker violates any provision of 499b of this title he shall be liable to the person ... injured thereby for the full amount of damages ... sustained in consequence of such action").

the broker shall prepare in writing and deliver promptly to all parties a properly executed confirmation or memorandum of sale setting forth ... all of the essential details of the agreement between the parties ... The broker who does not prepare these documents and retain copies in its files is failing to prepare and maintain complete and correct records as required by the Act.

7 C.F.R. § 46.28(a) (2000).

The regulations further require that "[w]hen the broker is authorized to sell ... he shall render an itemized accounting to the principal promptly on receipt of payment ... The failure to account ... and make full payment promptly is a violation of the Act." 7 C.F.R. § 46.28(b) (2000).

The Trustee's final argument that Weis–Buy did not properly account for all transactions is not sustained by the evidence. The Court has previously determined that the 10% charge is not a brokerage commission as contemplated by PACA. The broker's commissions that were charged are all clearly shown on the relevant invoices that are part of the record, even though copies of the invoices were not forwarded to the Debtor contemporaneously with the transaction. The undisputed evidence is that the Debtor agreed with Weis–Buy to the brokerage fee arrangement and was notified on all matters regarding the marketing of his crop.

 There is some evidence that Weis–Buy may not have complied completely with all of the accounting procedures required by the Act and regulations. Even if Weis–Buy has violated some technical regulation of PACA, the Trustee has no cause of action for the return of commissions paid because there is absolutely no evidence of any damages suffered by the Debtor as a result of the violation of the Act. As stated previously, proof of damages is a prerequisite to recovery pursuant to § 499e of title seven of the United States Code. See *Combined Professional Resources, Inc. v. Limeco, Inc.,* 801 F.Supp. 664, 673 (S.D.Fla.1992); *aff'd,* 9 F.3d 1558 (11th Cir.1993) (holding that grower's agent violated technical portions of PACA but no recovery would be awarded because the supplier suffered no injury).

## CONCLUSION

The facts in this case do not represent the situation PACA is designed to address. None of the cases cited by the Trustee support the arguments advanced by her. No statutory or case authority cited by the Trustee concludes that a violation of PACA regulations entitles a seller to a refund of fees it agreed to pay, absent any damages as a result of a violation of the Act. The only case research this Court found on this point was not only contrary to the Trustee's argument, but it involved the same attorney representing the Trustee in this action. *Combined Professional Resources, Inc. v. Limeco, Inc.,* 801 F.Supp. 664 (S.D.Fla.1992); (listing Robert M. Hustead as one of plaintiff's attorneys), *aff'd,* 9 F.3d 1558 (11th Cir.1993).

Therefore, for the reasons stated, the complaint is dismissed and judgment is entered in favor of the defendants, Weis–Buy Services, Inc. and Charles Weisinger. Defendants shall have thirty days from entry of judgment to file any appropriate post-judgment motions.

IT IS SO ORDERED.