Friederike Monika ADSANI,
Plaintiff–Appellant,

v.

Peter MILLER; PMA Literary and Film
Management, Inc.; Jean P. Sasson; Wil-
liam Morrow & Company, Inc.; Avon
Books; The Hearst Corporation; Ban-
tam Doubleday Dell Publishing Group,
Inc., Defendants–Appellees.

No. 96–9593.

United States Court of Appeals,
Second Circuit.

Argued June 10, 1997.

Decided Feb. 23, 1998.

Richard G. Menaker, New York City (Cheryl L. Davis, Menaker & Herrmann LLP, New York City, Bruce K. Lagerman, Lagerman & Associates, P.C., Reston, VA, of counsel), for Plaintiff–Appellant.

Richard Dannay, New York City (David O. Carson, Schwab Goldberg Price & Dannay, New York City, of counsel), for Defendants–Appellees Jean P. Sasson, William Morrow & Company, Inc., Avon Books, The Hearst Corporation and Bantam Doubleday Dell Publishing Group, Inc.

Carl E. Person, New York City (letter brief), for Defendants–Appellees Peter Miller and PMA Literary and Film Management, Inc.

OAKES and PARKER, Circuit Judges, and NICKERSON, District Judge.[*]

PARKER, Circuit Judge:

Friederike Monika Adsani, a resident of the United Kingdom with no assets in the United States, appeals a post-judgment order of the District Court for the Southern District of New York (Denise Cote, *Judge* ) dated November 19, 1996, directing her to post a bond of $35,000 to cover the costs and attorney's fees upon appeal pursuant to Rule 7 of the Federal Rules of Appellate Procedure. The bond order arose from her appeal of a judgment entered September 25, 1996 granting summary judgment and dismissing the complaint as to defendants Peter Miller and PMA Literary and Film Management, Inc. ("PMA") and an order entered April 23, 1996 granting summary judgment and dismissing the complaint as to the remaining five defendants, Jean P. Sasson, William Morrow & Company, Inc. ("Morrow"), Avon Books ("Avon"), The Hearst Corporation ("Hearst"), and Bantam Doubleday Dell Publishing Group, Inc. ("Bantam"), the merits of which will be addressed in a separate appeal *seriatim,* by previous order of this Court entered January 17, 1997, granting Adsani's motion for consolidation.

## I. BACKGROUND

Adsani is a resident of the United Kingdom with no assets in the United States. She is the author of, and holds the copyright in, a manuscript version of her unpublished autobiography entitled *Cinderella in Arabia* or *Cinderella in Kuwait* ("*Cinderella* "), a memoir of time she spent in the Middle East. The manuscript recounts the oppressiveness of her Arab husband and the brutal treatment of women in traditional Middle Eastern culture.

Adsani alleges that defendant Miller (Adsani's literary agent as well as literary agent to defendant Jean P. Sasson) had access to her manuscript and conspired with Sasson and the defendant publishers to publish a comprehensive, non-literal copy of her work under Sasson's name entitled *Princess: A True Story of Life Behind the Veil in Saudi Arabia ("Princess" )*, as well as a sequel entitled *Princess: Sultana's Daughters* (both of which became best sellers). Adsani theorizes that the defendants favored Sasson's work because Sasson was more famous than she. Adsani supported these allegations with (1) an affidavit of testimony of an industry professional; (2) a time-frame in which Sasson could have plagiarized her work; and (3) excerpts from her expert witness's report, which detail numerous purported similarities between *Cinderella* and *Princess.*

On December 21, 1994, Adsani brought a copyright infringement claim, along with related state law claims of misappropriation of ideas and unjust enrichment; she also claimed breach of fiduciary duty against defendants Miller and PMA.

Early in the litigation, the defendants requested a bond to cover attorney's fees to which they might be entitled under 17 U.S.C. § 505. *See Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). The district court granted this request, ordering Adsani to post a bond of $10,000. Adsani complied. During discovery, the court later amended this order to make the bond $50,000. Again, Adsani complied. Then, on April 19, 1996, the court granted summary judgment to the defendants on the copyright infringement and unjust enrichment claims. The state claim of misappropriation of ideas as against Sasson was also dismissed. The state claims of mis-

---

[*] The Honorable Eugene H. Nickerson, of the United States District Court for the Eastern District of New York, sitting by designation.

appropriation and breach of fiduciary duty against Miller and PMA were not dismissed. Pursuant to Fed.R.Civ.P. 54(b), Judge Cote entered partial judgment in favor of defendants Sasson, Morrow, Avon, Hearst and Bantam. This left only Miller and his agency, PMA, in the suit.

Subsequently, Miller and PMA moved for summary judgment, Adsani moved for reconsideration of the dismissal of misappropriation claims against Sasson, and all of the defendants moved for attorney's fees pursuant to 17 U.S.C. § 505. By opinion and order entered September 23, 1996 (and corrected opinion and order entered September 24, 1996), the district court granted summary judgment in favor of Miller and PMA, rejected Adsani's motion to reconsider, and granted attorney's fees to the defendants, in the amount of $11,448.25 for Miller and PMA, and $96,545.14 for defendants Sasson, Morrow, Avon, Hearst, and Bantam (a total of $107,993.39).[1]

The district court granted defendants' attorney's fees on the ground that Adsani's claim had been "objectively unreasonable." The defendants placed a demand for payment with Adsani's bonding company, and were paid $50,000 by the company a few months later. Adsani did not oppose enforcement of judgment for the remaining $57,993.39 in attorney's fees nor did she make payment on this remaining sum. She also made no attempt to stay enforcement of judgment through posting a supersedeas bond.

■ Adsani filed a timely Notice of Appeal, and the defendants moved the district court to require Adsani to post a bond pursuant to Fed.R.App.P. 7.[2] The district court granted this motion, requiring Adsani to post a bond of $35,000 "to cover the costs of appeal and a possible award of attorney's fees associated with that appeal." The district court found that such a bond was necessary because Adsani had no assets in the United States and she gave no supersedeas bond for the district court's approval to stay enforcement of the judgment, pursuant to Rule 62(d), Fed.R.Civ.P. Judge Cote, however, stayed the imposition of the post-judgment bond order for two weeks to give Adsani the opportunity to appeal her ruling. Adsani filed a notice of appeal of the Rule 7 order as well as the judgment dismissing on the merits.

Adsani moved in the district court for an extension of the stay of enforcement, but was denied. On December 4, 1996, Adsani moved this Court for an order vacating the Rule 7 bond or, in the alternative, consolidating the appeal from the Rule 7 order with the merits appeal. The defendants opposed the consolidation. On January 14, 1997, this Court heard oral argument on the motion and, on January 17, 1997, issued an order granting

---

1. Final judgment on these orders was entered on September 25, 1996, dismissing the complaint with prejudice.

2. The Federal Rules of Appellate Procedure use the term "supersedeas bond" as something distinct from a "cost bond." *Compare* Rule 7 (regarding bonds "to ensure payment of costs") *with* Rule 8 (regarding *inter alia* "supersedeas bonds"). *See also,* Fed.R.App.P. 8, Advisory Committee Notes, 1967 Adoption (noting that "[t]here appears to be no reason why matters relating to *supersedeas and cost* bonds should not be initially presented to the district court...." (emphasis added)). However, *Black's Law Dictionary* cites both Rule 7 and Rule 8 in its definition of "supersedeas bond": "A bond required of one who petitions to set aside a judgment or execution and from which the other party may be made whole if the action is unsuccessful." *Black's Law Dictionary* 1438 (6th ed. 1990); *see also* Fed.R.Civ.P. 62(d). It cites only Rule 7 in its definition of "cost bond," also known as an

"appeal bond." *Id.* at 346. In addition, "supersedeas" refers to the name of the writ containing a command to stay proceedings at law, suspending the power of the trial court to execute on the judgment appealed from. *See Id.* at 1437–38 (6th ed. 1990); *see also Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n,* 636 F.2d 755, 758 (D.C.Cir.1980) (discussing the nature of supersedeas bond under Rule 8 and former Rule 73(d)). Wright & Miller instruct that cost bonds and supersedeas bonds "should not be confused...." Wright, Miller & Cooper, 16A *Federal Practice and Procedure: Jurisdiction 2d* § 3953 at 278 (1996). It appears that a "supersedeas bond" is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a "cost bond" is prospective relating to the potential expenses of litigating an appeal. *See The Astoria,* 1 F.R.D. 742, 743 (E.D.N.Y.1941) ("The bond filed was merely a cost bond and not a supersedeas bond and was intended to cover costs in the appellate court only." (citations omitted)).

defendant's request that the appeals be heard *seriatim*, with the Rule 7 appeal first. This is the appeal of the Rule 7 order.

## II. DISCUSSION

### A. *Rule 39's Relationship with Rule 7*

■ Ordinarily, we would review the district court's post-judgment order pursuant to Rule 7 for abuse of discretion. *See Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 636 F.2d 755, 757 n. 2 (D.C.Cir.1980) (Rule 7 "leaves the requirement of an appeal bond to the district court's discretion. . . ."). Since, however, this appeal challenges the extent and type of costs allowable under Rule 7, we review de novo to settle a question of law. S. Childress & M. Davis, *Federal Standards of Review* § 2.13 at 2–92 (2d ed. 1986).

The federal rules provide that a district court "may require an appellant to file a bond or provide other security in such form and amount as it finds necessary to ensure payment of costs on appeal in a civil case." Fed.R.App.P. 7. Adsani argues that the definition of "costs" in Rule 7 should be supplied by Rule 39, Fed.R.App.P., which lists certain costs but makes no mention of attorney's fees. Thus, argues Adsani, the district court erred when it required her to post a bond for an amount that included fees.

The defendants-appellees, on the other hand, assert principally that Rule 39's definition of costs is irrelevant, and should not be imported into Rule 7. They argue, first, that Rule 7 allows the district court to require an appellant to post a bond to cover "costs." Second, Rule 7 does not define "costs." Third, the Copyright Act provides for the award of attorney's fees (including fees associated with appeals) to a prevailing party "as part of the costs." 17 U.S.C. § 505; *see, e.g., Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir.1993) (holding that in a suit brought under the Copyright Act "an award of attorney's fees may be made for services rendered on appeal as well as at the trial level.") (quoting 3 M.B. Nimmer & D. Nimmer, *Nimmer on Copyright* § 14.10[E], at 14–129). Therefore, defendants-appellees argue, an appellant in copyright litigation may be required to post a bond that includes the appellee's estimated attorney's fees on appeal.[3]

Adsani relies on *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). There, the plaintiffs brought a civil rights class action, but failed to respond to court deadlines and were generally slow and uncooperative in their prosecution of the case. The district court sanctioned the plaintiffs' attorneys, requiring them to pay defendant Roadway's costs and attorney's fees for the entire lawsuit. *Id.* at 756, 100 S.Ct. at 2458–59. The district court grounded its ruling in the confluence of several statutes. The applicable civil rights statutes, 42 U.S.C. §§ 1988, 2000e–5(k), allow the prevailing party to recover attorney's fees "as a part of costs." *Id.* Section 1927 of Title 28 of the United States Code permits a court to tax the excess "costs" of a proceeding against an attorney who multiplies proceedings needlessly.[4] *Id.* Therefore, because this was a civil rights case, the defendant's attorney's fees could be taxed against the plaintiffs' lawyers under section 1927. *Id.* The Fifth Circuit affirmed the finding that the plaintiffs' attorneys had violated section 1927, but reversed the imposition of attorney's fees.[5] *Id.* at 756–57, 100 S.Ct. at 2458–59.

---

3. The district court neither explicitly accepted nor rejected this last argument. Nor did it cite any of the authority on which it relied when including estimated attorney's fees in the order. It stated only the following: "While I do not find that the 'costs' provision of Rule 39, Fed.R.App. P., should be read to include attorney's fees, I do find that I have the authority to require plaintiff to file a bond that would cover both costs and attorney's fees from the appeal."

4. Note that section 1927 did not at the time include any language regarding attorney's fees.

This amendment was made after *Roadway Express* was decided.

5. The Fifth Circuit based its ruling on the fact that section 1927 subjected *attorneys* to costs whereas the civil rights statutes subjected *parties* to costs, which included attorney's fees. These facts would seem to make *Roadway* inapplicable to the case at bar. The Supreme Court, however, while discussing the different cost-bearers intended by the statutes, grounded its analysis in *Roadway* on the interpretation of the term "costs" contemporaneous to the passage of the

The Supreme Court disagreed with the reasoning of the district court. It noted that courts had generally construed section 1927 in conjunction with section 1920, which enumerates the costs that ordinarily are taxed to a losing party in federal court (and which does not include attorney's fees), and that the common understanding of the term "costs" at the time that section 1927 was enacted in 1813 was one that did not include attorney's fees. *Id.* at 757–78, 100 S.Ct. at 2459–60. Moreover, because section 1927 was "re-enacted" in 1853 along with section 1920, the two sections "should be read together as part of the integrated statute approved in 1853" that provided for uniform treatment of costs in federal courts. *Id.* at 760, 100 S.Ct. at 2460–61. Roadway argued that Congress's intent in putting counsel fee provisions in civil rights statutes should control. The Court responded that what controlled was the use of the term "costs" contemporaneous with the re-enactment of section 1927 and section 1920, rather than retroactively importing the definition of "costs" from the civil rights statutes, passed much later, after the Civil War. *Id.* at 759, 100 S.Ct. at 2460. The Court presumed that, in 1813 (and 1853), Congress followed the "American rule," that attorney's fees are not ordinarily part of the costs granted to a prevailing litigant, when it passed section 1927. *Id.* Therefore, the Court affirmed the Fifth Circuit's holding that attorney's fees could not be imposed under section 1927. The case was then remanded on other grounds.

The defendants rely on *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). There, the plaintiff sued a police officer under 42 U.S.C. § 1983 and state tort law. Prior to trial, the defendant offered a settlement of $100,000, which the plaintiff rejected. At trial, a jury awarded the plaintiff $60,000. *Id.* at 4, 105 S.Ct. at 3014. Plaintiff then filed a request for $171,692.47 in attorney's fees pursuant to 42 U.S.C. § 1988. The defendants objected on the theory that attorney's fees are "costs" within Fed.R.Civ.P. 68, which provides that a party will not be liable for costs incurred after an offer of settlement is made and rejected, if the final amount awarded to the party that rejected the settlement is less than the proffered settlement. The defendant argued that he should only have to pay $32,000, which was the amount of the attorney's fees that had accrued prior to the defendant's offer. The district court agreed. The court of appeals, however, reversed. And, the Supreme Court reversed the Court of Appeals, affirming the district court.

The Court noted that at the time of the adoption of the Federal Rules of Civil Procedure in 1937 the "American Rule" had, in several federal statutes, become "subject to certain exceptions," and that "[t]he authors of Federal Rule of Civil Procedure 68 were fully aware of these exceptions." *Id.* at 8, 105 S.Ct. at 3016. The Court gave several examples of such statutes, including the Copyright Act. The Court then stated the following:

> Against this background of varying definitions of "costs," the drafters of Rule 68 did not define the term; nor is there any explanation whatever as to its intended meaning in the history of the Rule.
>
> In this setting, given the importance of "costs" to the Rule, it is very unlikely that this omission was mere oversight; on the contrary, the most reasonable inference is that the term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 "costs." Thus, absent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68.

*Id.* at 8–9, 105 S.Ct. at 3016–17. This approach was consistent, the Court stated, with the plain meaning of the statute and rule, and with the rule's policy of encouraging settlement. *Id.* at 10, 105 S.Ct. at 3017. The Court distinguished *Roadway Express,* in a footnote, on the ground that the statute at issue in *Roadway Express* came with its own statutory definition of costs, and that Rule 68

statute. This approach is very salient to our discussion of "costs" allowable under Rule 7.

did not. *Id.* at 9 n. 2, 105 S.Ct. at 3016–17 n. 2.

The Federal Rules of Appellate Procedure, including Rule 7, were transmitted to Congress by the Chief Justice of the United States on January 15, 1968 and became effective on July 1, 1968. Further, Rule 7 was amended effective August 1, 1979. The Copyright Act, first adopted in 1909, contained section 40, the predecessor to section 505, which similarly provided for attorney's fees as part of the costs. *See Marek,* 473 U.S. at 8, 105 S.Ct. at 3016. Thus, the drafters of Rule 7, Fed.R.App.P.—like the drafters of Rule 68, discussed in *Marek*—were equally aware of the Copyright Act's provision for the statutory award of attorney's fees "as part of the costs" when drafting Rule 7 and not defining costs therein. *See* 17 U.S.C. § 505. *Marek* provides very persuasive authority for the proposition that the statutorily authorized costs may be included in the appeal bond authorized by Rule 7.

Three circuit-level cases touch upon the issue of whether Rule 39 supplies the definition of "costs" to Rule 7, without addressing the effect of a separate statute authorizing attorney's fees "as part of the costs" upon appeal. In *In re American President Lines, Inc.,* 779 F.2d 714 (D.C.Cir.1985), the court stated that "[t]he costs referred to [in Rule 7] are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorney's fees that may be assessed on appeal." *Id.* at 716 (footnotes and citations omitted). However, the court cites no case law that directly supports this proposition. Furthermore, unlike this case, there was no statute authorizing an award of attorney's fees "as part of the costs." The holding in *American President Lines* comports with the usual practice in the United States that a prevailing party is not entitled to recover attorney's fees as "costs" in the absence of a statute allowing such an award. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Therefore, the case does not directly support plaintiff-appellant's case.[6]

Next, in *Sckolnick v. Harlow,* 820 F.2d 13 (1st Cir.1987) (per curiam), the First Circuit affirmed the district court's imposition of a Rule 7 bond in the amount of $5,000 on a litigious *pro se* plaintiff who sued the defendants under 42 U.S.C. §§ 3612 and 3617 and lost at summary judgment. The First Circuit noted "that defendants' motion below requesting a bond sought 'security for the costs, *including attorney's fees,* which may be awarded by the Court of Appeals … pursuant to Fed.R.App.P. 38 and 39." *Id.* at 15 (emphasis added). Further, the First Circuit found that "the district court's decision to set the amount at $5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility." *Id.* The appellate court held that the district court did not abuse its discretion in judging the appeal to be frivolous. *Id.* The *Sckolnick* case also lacked any statute authorizing attorney's fees as part of the costs. The decision demonstrates, however, that the First Circuit interprets Rule 7 to permit a bond which sought security for a possible sanction in the form of attorney's fees upon appeal. By implication, "costs" under Rule 7 would not exclude attorney's fees as a blanket rule for that court.

A third, unreported decision touches on the relationship between Rule 7 and Rule 39. In *Hirschensohn v. Lawyers Title Ins. Corp.,* No. 96–7312, 1997 WL 307777 (3d Cir. June 10, 1997) (per curiam), the court addressed "whether anticipated attorney's fees, which are available under Virgin Islands law, may

---

6. In addition, the seemingly absolute rule announced in *President* either has been modified by or has been overruled implicitly by *Montgomery & Assocs. v. CFTC,* 816 F.2d 783, 784 (D.C.Cir. 1987). In *Montgomery,* the D.C. Circuit held that "costs" in Rule 39 may include attorney's fees subject to the rule's time limits where the substantive statute upon which the appeal is based includes the recovery of attorney's fees "as part of the costs" *Id.* at 784; *accord Singer v. Shannon & Luchs Co.,* 868 F.2d 1306, 1307 (D.C.Cir. 1989) (per curiam) (noting in dicta the circuit's previous holding that attorney's fees under 42 U.S.C. § 7607(f), which were defined to be part of costs, were *not* subject to Rule 39(d)'s time limit) (citing *Alabama Power Co. v. Gorsuch,* 672 F.2d 1, 5–6 (D.C.Cir.1982)). Thus, in light of *Montgomery, Presidential* provides an ambiguous precedent of little authority.

be considered as 'costs' on appeal and the subject of an appeal bond." *Id.* at * 1. The Third Circuit found that "costs" under Rule 39 do not include attorney's fees, *id.* at *2, and that "Rule 7 does not authorize a bond to cover estimated costs of attorney's fees." *Id.* at *3. The court, however, based its ruling on attorney's fees that were assessed as part of Virgin Islands law, not federal law. In fact, the Third Circuit found that this Virgin Islands law did "not authorize assessment of counsel fees on appeal to this Court." *Id.* Thus, *Hirschensohn* does not address the case where, as here, an independent federal statute explicitly authorizes attorney's fees "as part of the costs" both at trial and upon appeal which permits a district court to order a Rule 7 appeal bond including such costs.

■ The principal dispute here is over Rule 39's relevance to the question of what the term "costs" in Rule 7 means. Adsani argues, first, that Rule 39 defines "costs" for the Federal Rules of Appellate Procedure, and, second, that this definition should be used in Rule 7. Adsani's argument fails because she is wrong on the first point: Rule 39 does not define costs for all of the Federal Rules of Appellate Procedure.

Rule 39 is divided into five sections. These provide: (a) against whom costs will be taxed, (b) the taxability of the United States; (c) the maximum rate for costs of briefs, appendices and copies of records, (d) the procedure by which a party desiring "such costs" [7] may claim them, and (e) that costs incurred in the preparation and transmission of the record on appeal will be taxed in the district court. *See* Fed.R.App.P. 39(a)-(e). None of these provisions purports to define costs: each concerns procedures for taxing them. Specific costs are mentioned only in the context of how that cost should be taxed, procedurally speaking.

We read *Marek* to support the view that Rule 39 does not exhaustively define "costs." There, the Supreme Court construed the meaning of the same word—"costs"—in a Rule of Civil Procedure rather than a Rule of Appellate Procedure. The Federal Rules of Civil Procedure also have a Rule devoted to procedures relating to costs, Fed.R.Civ.P. 54(d), but this Rule played no part in the Supreme Court's analysis in *Marek.*[8] Adsani argues that Rule 7 has, in Rule 39, a "preexisting definition of costs," and therefore is more akin to *Roadway Express* than *Marek,* but Rule 7 does not have a pre-existing definition of costs any more than Fed.R.Civ.P. 68, the rule interpreted in *Marek,* had its own definition.

In *Roadway Express,* the district court had levied attorney's fees against an attorney under the "costs" term of 28 U.S.C. § 1927. The Court found that section 1927 should be read in conjunction with section 1920, which defined costs without reference to attorney's fees. Thus, in a system adhering to the American Rule, there was no authority on which the district court could tax attorney fees against the attorney. Here, Rule 7 provides that the district court may provide security for costs on appeal, and 17 U.S.C. § 505 departs from the American Rule to provide specific statutory authority for including attorney's fees in these costs on appeal. Indeed, it is revealing that the Supreme Court even considered section 1920 in its *Roadway Express* analysis—if attorney's fees could *never* be included in "costs," there would have been no need to look past section 1927, which provided only for "costs."

■ Inclusion of attorney's fees in a Rule 7 bond does not offend Rule 39 any more than inclusion of any other costs does. Rule 39 provides only that (unless the court orders otherwise) costs on appeal go to the winner, and that certain procedures be followed in

---

**7.** It is unclear whether "such costs" include only the costs mentioned in subsection (c), *see Mc-Donald,* 966 F.2d at 114, or all costs.

**8.** It is also interesting to note that at the time of *Marek,* Rule 54(d) did not differentiate between attorney's fees and other costs. Only in 1993 was the Rule revised to include two subsections, one devoted to "Costs Other than Attorney's Fees," *id.* 54(d)(1) and the other devoted to "At-

torney's Fees," *id.* 54(d)(2). The Advisory Notes make clear that the new subsection (d)(2) relates to "attorney's fees, whether or not denominated as 'costs.'" *Id.* Advisory Committee Notes, 1993 Amendments. Thus, the Rule drafters clearly considered attorney's fees to be in some instances part of costs, both before and after the 1993 Amendments to Rule 54.

the taxing of these costs: the district court's order does not require that costs go to the loser, or that any attorney's fees awarded by this Court be taxed in a manner inconsistent with Rule 39.

■ Nor is this interpretation inconsistent with 28 U.S.C. § 1920, which grants, permissively, a judge or clerk of court the power to tax certain enumerated costs. Adsani argues that section 1920 enumerates each and every item that may be considered a cost in the federal system. This interpretation would effectively read the words "as part of the costs" out of section 505 (and many other statutes, for that matter). If section 1920 can grant courts the power to tax certain expenses as "costs," then section 505 most certainly can as well.

■ Nor does the district court's action contravene the apparent purpose of Rule 7. The court has made a determination that this particular appellant poses a payment risk because she has no assets in the United States and has failed to post a supersedeas bond. The purpose of Rule 7 appears to be to protect the rights of appellees brought into appeals courts by such appellants, yet under Adsani's interpretation of Rule 7, she will be required to cover only a minuscule fraction of her potential liability for bringing this appeal.

Hence, nothing in the language of Rules 7 and 39 prevents, and, more importantly, *Marek* and *Roadway Express* support, the district court's action. Adsani warns that the district court's approach will lead to "anomalous inconsistencies" and the "bizarre" result of much greater bonds being required where the appellant faces the imposition of attorney's fees on appeal. We do not think it either bizarre or anomalous for the amount of the bond to track the amount the appellee stands to have reimbursed. One could as easily call the converse situation "anomalous": in ordinary civil litigation where a

bond is justified, appellees would be able to secure bonds for all of the funds to which they would be entitled after judgment in their favor, whereas copyright appellees (among others) would only be entitled to security on a small portion of that which would be theirs after a successful defense.

■ We find that Adsani's argument that Rule 39's "definition" of costs should be imported into Rule 7 is unavailing because Rule 39 has no definition of the term "costs" but rather defines the circumstances under which costs should be awarded.[9] Adsani's argument that Rule 7 costs cannot include attorney's fees is also unavailing because the Copyright Act in section 505 of Title 17 allows attorney's fees to be levied "as part of the costs."

### B. *The Legislative History of Rule 7*

Adsani argues that the history of Rule 7 itself shows that attorney's fees should not be included in its definition of costs. Rule 7 was originally derived from the former Fed. R.Civ.P. 73(c) "without change in substance," and originally provided for a bond in the fixed amount of $250. *See* Fed.R.App.P. 7, Advisory Comm. Notes, 1967 Adoption, 1979 Amendment. In 1979, Rule 7 was amended: the fixed $250 amount was changed to an amount to be set by the court. The Advisory Committee stated that the $250 figure "has remained unchanged since the adoption of the rule in 1937. Today it bears no relationship to actual costs. The amended rule would leave the question of the need for a bond for costs and its amount in the discretion of the court." *Id.* at 1979 Amendment. Adsani argues that this history reveals that the Rule originally did not countenance attorney's fees—because $250 is obviously too low an amount to include them—and that the subsequent amendment did nothing to include them.

---

**9.** We note that the district court's opinion seems to adopt Adsani's reasoning that "costs" as defined by Rule 39, Fed.R.App.P., limits or defines the term "costs" in Rule 7. The district court cites several circuit-level cases for the proposition "that 'costs,' as defined by Rule 39, do not include attorney's fees even when the underlying statute permits such an award." *Id.* We do not

discuss these cases here because we find that they are irrelevant to our conclusion that term "costs" under Rule 7 may include the definition of "costs" contained in the relevant substantive statute under which appeal is sought and are not limited by the enumeration of some "costs" found in Rule 39.

We think that this evidence of the drafters' intent is too weak to be convincing. It is not clear that $250 would have been such a bad estimate for attorney's fees for a simple appeal in 1937. It certainly seems a large sum for appellate-court ministerial fees in 1937: *currently* the costs taxed to losers in the Second Circuit are the $105 notice-of-appeal charge plus printing charges for the appendices and briefs. Therefore, we find that the history of Rule 7 is equivocal at best and Adsani's argument does not aid in the construction of the term "costs."

## C. *Putting A Price on Appeal*

■ Finally, Adsani contends that the enormous size of the bond constitutes an impermissible barrier to appeal, citing *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072 at 2080, 23 L.Ed.2d 656 (1969) ("A court is 'without right to ... put a price on an appeal.'") (citation omitted), *modified, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).[10] She also argues that allowing district courts to make a determination of the case's chances on appeal thwarts the review process.

Defendants respond by stating that while the doctrine of *Pearce* is good law, it is not absolute: *any* Rule 7 bond is a "price on an appeal," yet presumably Rule 7 is valid. Thus, they argue, there must be some showing that the bond requirement actually impedes the appellant financially. Defendants then assert simply that Adsani has made no showing of inability to pay the premium on the bond.

Adsani replies that she stated several times to the district court that its imposition of bonds throughout the course of the litigation below caused her financial hardship. For instance, in response to defendants' initial motion at trial for attorney's fees, she claimed that "[i]n order to finance this case, I was forced to sell my home." Adsani has provided no documentation of this alleged sale of her home, nor has she demonstrated that its sale was required to finance this litigation. In fact, Judge Cote found that Adsani had "a complete failure to provide any specific information regarding [her] finances." App. at 293. Further, in reply to defendants' letter motions for an appeal bond, Adsani did not oppose the bond on any particularized grounds of financial hardship until this appeal.

Adsani also complains that the district court handled the bonding order through letters and not formal motions, apparently on the theory that she would have adduced more evidence of her financial situation in a formal motion. Something more than conclusory assurances, however, must be required of someone with no assets in the country. Moreover, such documentation could easily have been provided in a letter brief. It is, therefore, hard to see how the lack of a formal motion prejudiced Adsani in any way.

■ Upon appeal, Adsani appears to be arguing that the district court's bond order imposes an unconstitutional burden on her right to appeal. As a preliminary matter, the Due Process Clause of the Fifth Amendment does not establish an absolute right to an appeal. *See United States v. MacCollom*, 426 U.S. 317, 323, 96 S.Ct. 2086, 2090–91, 48 L.Ed.2d 666 (1976). In addition, neither the Equal Protection Clause of the Fourteenth Amendment nor the equal pro-

---

**10.** Adsani relies on the language in *Pearce* that a "court is 'without power ... to put a price on an appeal.'" 395 U.S. at 724, 89 S.Ct. at 2080 (quoting *Worcester v. Commissioner*, 370 F.2d 713, 718 (1st Cir.1966)). This language, however, is dicta which does not prevent federal courts from imposing statutorily authorized costs upon appeal. In *Pearce*, the Supreme Court held that there was a constitutional limitation on the imposition of a more severe sentence following appeal and reconviction. In the quote relied upon by Adsani, the Court meant that the "price on an appeal" for a defendant successfully challenging his first conviction should not be suffering the imposition of a more severe criminal sentence upon re-trial. 395 U.S. at 724, 89 S.Ct. at 2080. The "price on an appeal" language originated in a First Circuit case called *Worcester*, in which a district court in a criminal case imposed a suspended sentence upon a defendant in exchange for his agreement not to appeal his conviction. The First Circuit held that this practice was an improper way "to bargain with the defendant, or to put a price on an appeal." 370 F.2d at 718–19. Therefore, the forbidden "price on an appeal" is metaphorical, meaning merely some condition that is unacceptably burdensome in the eyes of a reviewing court, but does not refer to the absolute inability of the courts to set costs upon appeal where authorized by statute.

tection aspect of the Fifth Amendment require litigants receive "absolute equality or precisely equal advantages." *Id.* (quoting *San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). "When an appeal is afforded, however, it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause." *Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972). Therefore, principles of due process and equal protection mandate that an appeal process established by statute must be fairly and equally accessible to all litigants. *Cf. Pearce,* 395 U.S. at 724–725, 89 S.Ct. at 2080.

The right to appellate review in federal court is conferred by statute alone. *See* 28 U.S.C. § 1291 ("The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court"); *Heike v. United States,* 217 U.S. 423, 30 S.Ct. 539, 54 L.Ed. 821 (1910) (federal right of appeal is purely statutory); *see also* 15A Wright, Miller, Cooper, *Federal Practice and Procedure* § 3901 n. 2 (2d ed. 1991).

■■■■ Jurisdiction of the courts of appeals is not discretionary, but conferred "as a matter of right," where the decision appealed from was rendered pursuant to a statutory grant of federal appellate jurisdiction. The Constitution grants to Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const., Art. I, § 8, Cl. 8. Thus, the Copyright Act is one of the few statutes authorized by a specific clause in the Constitution. *See Fogerty,* 510 U.S. at 526, 114 S.Ct. at 1029. Congress has granted to the district courts of the United States original and exclusive jurisdiction over any civil claim "arising under any Act of Congress relating to ... copyrights," pursuant to 28 U.S.C. § 1338. And, the courts of appeals of the United States have exclusive jurisdiction to hear an appeal from a final decision of district court when "the jurisdiction of that court was based, in whole or in part, on

section 1338 of this title," pursuant to 28 U.S.C. § 1295. *See* 28 U.S.C. §§ 1291, 1295. Therefore, Adsani is correct in maintaining that she has a right to appeal in this case.

■■■■ Once established, the right to appeal, however, may be limited by statute requiring, for instance, the posting of security for "expenses, including counsel fees, which may be incurred" on appeal without offending principles of Equal Protection or Due Process fairness. *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 551–52, 69 S.Ct. 1221, 1228, 93 L.Ed. 1528 (1949); *see also O'Day v. George Arakelian Farms, Inc.,* 536 F.2d 856, 860 (9th Cir.1976) (holding that Congress may properly "condition the right to appeal upon posting security sufficient to protect appellee from loss of damages already awarded, interest, and (as established in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 552, 69 S.Ct. 1221, 1228, 93 L.Ed. 1528 (1949)) costs on appeal, including a reasonable attorney's fee."). Admittedly, the Supreme Court found that "to require security for payment of any kind of costs, or the necessity for bearing any kind of expense of litigation, has a deterring effect." *Cohen,* 337 U.S. at 552, 69 S.Ct. at 1228. Nonetheless, government has the power "to close its courts .... if the condition of reasonable security is not met." *Id.*

■■■■ Government's power to "close its courts" by imposing fees upon appeal, however, is not unlimited, and may be invalid either facially, *see Lindsey,* 405 U.S. at 77–79, 92 S.Ct. at 876–77; *O'Day,* 536 F.2d at 861, or as applied. *See Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341–42 (7th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); *American President Lines,* 779 F.2d at 718–19. In *Lindsey,* the Supreme Court held that the Equal Protection clause was violated by a state statute requiring a lessee who wished to appeal to file a bond in the amount of twice the rental value of the premises involved. 405 U.S. at 77, 92 S.Ct. at 876. The Court based its ruling on the fact that "the double-bond requirement heavily burdens the statutory right ... to appeal." *Id.* While the Court found it reasonable to require adequate security to preserve an award already made and

protect appellees from loss during appeal, the double-bond failed to effectuate these purposes. *Id.* at 77–78, 92 S.Ct. at 876–77. The Court noted that the double-bond requirement did not serve to screen out frivolous appeals because the double-bond "allows meritless appeals by others who can afford the bond." *Id.* at 78, 92 S.Ct. at 876–77. The requirements of security for appeal to protect appellees are valid if "reasonably tailored to achieve these ends and uniformly and nondiscriminatorily applied." *Id.* at 79, 92 S.Ct. at 877. In addition, such security should never be automatically assessed because this will undoubtedly discriminate against those litigants who cannot afford to post a bond. *Id.*

The *Lindsey* test has been used to invalidate an act of Congress. In *O'Day,* the Secretary of Agriculture imposed a double bond to effectuate appeal to the district court, pursuant to 7 U.S.C. § 499g(c). Invoking *Lindsey,* the Ninth Circuit held that the *double* bond requirement was not rationally related to securing the risk involved and constituted an unconstitutional denial of equal protection. Nonetheless, due to a severability clause in 7 U.S.C. § 499q, the statutory provision requiring a bond was sustained to the extent that it required a bond sufficient to secure payment of the damages award, interest, and costs on appeal, including attorney's fees. *Id.* at 861.

■ Here, the threshold question is whether 17 U.S.C. § 505 is facially unconstitutional, based on *Lindsey* and *O'Day.* Section 505 provides: "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Therefore, section 505 appears to be valid on its face because the statute neither permits the imposition of a double bond nor is the bond automatically imposed.

Furthermore, in *Fogerty,* the Supreme Court has extensively analyzed 17 U.S.C. § 505 and its place within the statutory scheme of the Copyright Act. With regard to the award of attorney's fees under 17 U.S.C. § 505, the Court held that "prevailing plaintiffs and prevailing defendants are to be treated alike." *See Fogerty,* 510 U.S. at 534, 114 S.Ct. at 1033. In contrast to Civil Rights Act cases, in which prevailing plaintiffs are favored, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527, 114 S.Ct. at 1029–30. The High Court reached this decision because "the policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement," and "the limited scope of the copyright holder's statutory monopoly . . . reflects a balance of competing claims upon the public interest." *Id.* at 526, 114 S.Ct. at 1029 (quotation marks and citation omitted). Congress has decided to constrain the rights of copyright litigants upon appeal by exposing them to the potential imposition of a Rule 7 bond for the "costs of appeal" where attorney's fees are awarded "as part of the costs." *See* 17 U.S.C. § 505; Fed.R.App.P. 7. Given (1) the Supreme Court's extensive discussion of the purpose of section 505 in *Fogerty* and (2) the additional observation that the type of bond contemplated by section 505 has been explicitly endorsed by the Ninth Circuit in *O'Day* and the Supreme Court in *Cohen,* we hold that the statute's requirements of security for appeal to protect appellees are "reasonably tailored to achieve these ends." *Lindsey,* 405 U.S. at 78, 92 S.Ct. at 876–77.

■ A cost requirement, however, valid on its face may be unconstitutional as applied to a particular case, *see Boddie v. Connecticut,* 401 U.S. 371, 379–81, 91 S.Ct. 780, 786–88, 28 L.Ed.2d 113 (1971); *Clark,* 501 F.2d at 341; *American President Lines,* 779 F.2d at 718–19. In *Boddie,* the Supreme Court held that a state statute which required fees to bring a civil action for divorce, regardless of ability to pay, violated the Due Process Clause of the Fourteenth Amendment. 401 U.S. at 382, 91 S.Ct. at 788. In *Boddie,* the deciding factor was appellants' undisputed inability to pay the costs as well as undisputed good faith in seeking divorce. Further, in *Clark,* a district court ordered that each par-

ty would bear its own trial costs, pursuant to Rule 54(d), unless there was an appeal, in which case "there would be no costs assessed against those who do not appeal." *Clark,* 501 F.2d at 341. The Seventh Circuit overturned this order, stating "[a]lthough the district court has discretionary power to assess costs, the action it took was improper and clearly an abuse of discretion.... [A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated." *Id.* Moreover, in *American President Lines,* the D.C. Circuit held that the district court exceeded its authority in requiring a $10,000 cost bond under Rule 7 alone without sufficient justification. 779 F.2d at 718–19.

If we compare the instant case to *Boddie,* we find that without any showing of her financial hardship, the bond imposed on Adsani is not an impermissible barrier to appeal and Adsani's arguments to the contrary should be rejected. Unlike the district court in *Clark,* the imposition of trial costs were not conditioned upon whether or not appeal was taken. First of all, Adsani was ordered to pay a judgment of trial attorney's fees of $107,993.39, regardless of whether she appealed or not. Secondly, the district court imposed attorneys fees under Rule 7 to provide a security unrelated to the award of fees at trial, but rather looked to the merits of the appeal itself and the material circumstances of the litigants. Thus, unlike *American President Lines,* the district court did not exceed its statutory authority to impose costs. The district court directed Adsani to pay attorney's fees because her case was found to be "objectively unreasonable." The Supreme Court has expressly endorsed "objective unreasonableness" as a sound basis for awarding attorney's fees to a prevailing defendant in a Copyright Act case, pursuant to 17 U.S.C. § 505. *Fogerty,* 510 U.S. at 534 n. 19, 114 S.Ct. at 1033 n. 19. Adsani's trial bond of $50,000 only covered part of these attorney's fees: $57,993.39 remained unsecured. Under these circumstances, where Adsani has no assets in the United States and failed to adduce credible evidence of an inability to pay, the district court did not abuse its discretion nor violate Adsani's due process rights in imposing an appeal bond of $35,000.

As for Adsani's argument that the district court is prejudging the case's chances on appeal: not only is such prejudging part and parcel of Rule 7, but this argument falls with the financial hardship argument. The only way that an appellant would have to pay any "costs" would be if he or she lost on appeal: therefore, a district court's imposition of any sort of cost bond (whether or not including attorney's fees) can always be described as an implicit finding that the appellant's appeal lacks merit, or at least that the appellant poses a payment risk. A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal. *See Sckolnick,* 820 F.2d at 15. The power to impose an appeal bond under Rule 7 has been specifically given to the discretion of the district court. *See* Rule 7, Fed.R.App.P. ("The district court may require appellant to file a bond or provide other security....") Moreover, where, as here, a federal statute includes attorney's fees "as part of the costs" which may be taxed upon appeal, the district court may factor these fees into its imposition of the bond for costs. In any event, without any showing of financial hardship, there is no deterrent to appeal in the first place. If the court has not deterred the appeal, the court has not frustrated the review process.

Consequently, we affirm the order of the district court requiring Adsani to post a bond of $35,000 pending the outcome of her appeal pursuant to Rule 7 of the Federal Rules of Appellate Procedure.